IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DEMALL REEVES,

       Plaintiff,

vs.                                           No. CIV 19-0687 JB/LF

JOSHUA CHAFIN, *No. 5539 of the
Albuquerque Police Department*,

       Defendant.

**MEMORANDUM OPINION AND ORDER**[1]

    **THIS MATTER** comes before the Court on: (i) the Defendant Joshua Chafin's Motion

for Summary Judgment, filed June 17, 2020 (Doc. 18)("MSJ"); (ii) the Defendant Joshua Chafin's

Motion for Stay of Discovery, filed June 17, 2020 (Doc. 20)("Motion for Stay"); (iii) the Plaintiff's

Motion for Further Extension to Respond to Defendant[']s Motion for Summary Judgment, filed

October 13, 2020 (Doc. 30)("Motion for Extension"); and (iv) the Plaintiff's Motion for Furthe[r]

Extension to File Response to Motion for Summary Judgment, filed March 18, 2021 (Doc.

52)("Motion for Extension on Response to MSJ").  The Court held hearings on February 11, 2021,

and March 29, 2021.  See Clerk's Minutes at 1, filed February 11, 2021 (Doc. 49); Clerk's Minutes

at 1, filed March 29, 2021 (Doc. 61).  The primary issues are: (i) whether the Court should grant

Plaintiff Demall Reeves an extension of time to respond to the MSJ so that he can undertake limited

---

[1]This Memorandum Opinion and Order disposes of: (i) Defendant Joshua Chafin's Motion for Summary Judgment, filed June 17, 2020 (Doc. 18); (ii) Defendant Joshua Chafin's Motion for Stay of Discovery, filed June 17, 2020 (Doc. 20); (iii) Plaintiff's Motion for Further Extension to Respond to Defendant[']s Motion for Summary Judgment, filed October 13, 2020 (Doc. 30); and (iv) Plaintiff's Motion for Furthe[r] Extension to File Response to Motion for Summary Judgment, filed March 18, 2021 (Doc. 52).  The Court will issue a more thorough Memorandum Opinion at a later date fully detailing its rationale for its decision.

discovery under rule 56(d) of the Federal Rules of Civil Procedure; (ii) whether the Court should stay discovery pending a decision on the MSJ, because Defendant Joshua Chafin, a police officer with the Albuquerque Police Department ("APD"), has asserted a defense of qualified immunity; (iii) whether the Court should consider Plaintiff's Response to Defendant Joshua Chafin's Motion for Summary Judgment, filed March 15, 2021 (Doc. 51)("Response"), even though it was submitted after the deadline; (iv) whether the three-year 41 U.S.C. § 1983 statute of limitations bars Reeves' (a) false arrest claim, and (b) malicious prosecution claim; and (v) whether Chafin is entitled to qualified immunity, because (a) Chafin had probable cause to arrest Reeves for misdemeanor criminal property damage, and (b) Chafin did not violate clearly established law. The Court concludes that (i) the Motion for Extension is denied, for the reasons stated on the record, because (a) discovery related to damages in response to a motion for summary judgment is not appropriate, (b) the evidence on the record shows there is a reasonable inference of malice, and (c) discovery under rule 56(d) is not appropriate as a fishing expedition on a motion for summary judgment where qualified immunity is asserted, see Draft Transcript of Hearing at 36:22-38:10 (taken February 11, 2021)(Court)("Tr.")(stating reasons);[2] Lewis v. City of Ft. Collins, 903 F.2d 752, 759 (10th Cir. 1990); (ii) the Motion for Stay is granted, for the reasons stated on the record, because Reeves agrees that Chafin is entitled to a stay of discovery, see Tr. at 38:23-39:6 (Court, Twohig); (iii) the Court will consider the Response to the MSJ, because the Court wants to decide the issues on the merits; (iv) the statute of limitations (a) bars Reeves' false arrest claim, because Reeves filed the Complaint for Damages, filed Jury 26, 2019 (Doc. 2)("Complaint"), more than three years after the June 30, 2016, incident, but (b) does not bar his malicious prosecution

---

[2]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

claim, because Reeves filed the Complaint within three years of when the state criminal complaint was denied; and (v) Chafin is entitled to qualified immunity, because (a) Chafin did not violate Reeves' constitutional rights, because Chafin had probable cause to arrest Reeves for misdemeanor criminal property damage, and (b) Chafin did not violate clearly established law, meaning Chafin is entitled to qualified immunity.  Accordingly, the Court grants the MSJ.

## FACTUAL BACKGROUND

This case arises out of a June 30, 2016, incident related to property damage, and the subsequent criminal complaint and summons that Chafin lodged against Reeves.  See Officer Chafin's Police Report No. 160060181 at 2, filed June 17, 2020 (Doc. 18-3)("Police Report"); Declaration of Plaintiff Demall Reeves ¶¶ 18-33, at 5-13 taken October 12, 2020 (Doc. 30-1)("Reeves Decl."); Criminal Summons at 1, filed June 17, 2020 (Doc. 18-3)(filed in state court on July 7, 2016).  See also Defendant Joshua Chafin's Notice of Lodging, filed June 17, 2020 (Doc. 19)(providing notice that Chafin filed a flash drive containing video exhibits in support of his MSJ documenting the June 30, 2016, incident: Lapel Video AXON_Flex_Video_2016-06-30_2219 ("Axon BWC[3] Video 1")(filed as Chafin's Exhibit 3); AXON_Flex_Video_2016-06-30_2237 ("Axon BWC Video 2")(filed as Chafin's Exhibit 4); AXON_Flex_Video_2016-06-30_2255 ("Axon BWC Video 3")(filed as Chafin's Exhibit 5), AXON_Flex_Video_2016-07-01_0013 ("Axon BWC Video 4")(filed as Chafin's Exhibit 6); and AXON_Flex_Video_2016-07-01_0631 ("Axon BWC Video 5")(filed as Chafin's Exhibit 7).  On June 30, 2016, Reeves, the owner of security company, was moving property off the parking lot for a hotel for which he worked.  See Reeves Decl. ¶¶ 16-23, at 4-8.  Reeves was moving the property from the hotels'

---

[3]Axon, formerly TASER International, manufactures body worn cameras ("BWC").  See Product Catalog, AXON, https://www.axon.com/products?productCategory=cameras (last visited March 22, 2021).

parking lot, because the property was blocking the parking lot and the people who had placed the property there did not have permission from the hotel.  See Reeves Decl. ¶¶ 16-23, at 4-8; id. at ¶ 19, at 6-7 (stating that Reeves had moved the property, including "toss[ing]" "some . . . lighter" property, that "could be tossed . . . without causing any damage," and otherwise disputing damaging any property); Police Report at 2.  Chafin arrived on scene after being dispatched to respond to a call that a man had thrown and damaged property.  See Police Report at 2; Axon BWC Video 1 at 2:50-9:55.  Chafin talked to Reeves, who identified himself as the head of the security company for the hotel, and Reeves denied damaging any of the items, suggested that it was homeless people who had caused any damage, and stated that he had a witness and camera footage showing that he had not caused any damage.  See Police Report at 2; Reeves Decl. ¶¶ 18-27, at 6-11; Axon BWC Video 1 at 0:30-9:55.  Reeves showed Chafin pictures of the property, and Chafin writes that Reeves "show[ed] me pictures of the items stacked around the time that he moved them.  They did not appear to be damaged but there was nothing to show they were not moved after the pictures."  Police Report at 2. See Reeves Decl. ¶ 26, at 11 (stating Reeves showed Chafin pictures); Axon BWC Video 1 at 6:30-9:30 (documenting Reeves showing Chafin pictures).  After investigating the scene and the interviewing the property owner, who wanted to press charges, Chafin informed Reeves that, although, he had probable cause to arrest Reeves, he would instead charge Reeves with misdemeanor criminal property damage.  See Police Report at 2-3; Reeves Decl. ¶ 27, at 11; Axon BWC Video 2 at 0:30-9:00.  Next, Chafin talked to a witness, a resident of the hotel, who stated that he had seen the incident.  See Police Report at 2; Reeves Decl. ¶ 27, at 11; Axon BWC Video 3 at 2:20-8:45 (documenting the interaction).  Chafin called another witness, who described damage to the items.  See Axon BWC Video 4 (documenting Chafin's phone call with the witness). The next day, Chafin talked to Reeves' employee, Dawn

Weeber, who had notified Reeves of the property on the parking lot and who had witnessed part of the incident. <u>See</u> Police Report at 2-3; Reeves Decl. ¶ 28, at 11; Axon BWC Video 5 at 2:50-9:55.

On July 6, 2016, Chafin filed a state criminal complaint and summons, charging Reeves for misdemeanor criminal property damage less than $1,000.00, for violating N.M.S.A. § 30-15-1. <u>See</u> Criminal Summons at 1, filed June 17, 2020 (Doc. 18-3). On or about July 27, 2016, William Smith, the owner of the hotel Reeves worked for, fired Reeves. <u>See</u> Reeves Decl. ¶ 33, at 13; MSJ at 1-22 (not disputing this fact). Smith said that the police gave him a report documenting Reeves' criminal recording, including his juvenile criminal record. <u>See</u> Reeves Decl. ¶ 33, at 13-14; MSJ at 1-22 (not disputing this fact). Smith did not identify the officer who had given him the criminal history report, even though Reeves asked three times. <u>See</u> Reeves Decl. ¶ 33, at 13-14; MSJ at 1-22 (not disputing this fact). Reeves called Smith multiple times to ask Smith who had given him the criminal history report, but Smith did not answer the calls. <u>See</u> Reeves Decl. ¶ 33, at 13-14; MSJ at 1-22 (not disputing this fact). For the next three months, Reeves applied for security work at hotels, parking lots, bars and other businesses, but he was not able to find employment. <u>See</u> Reeves Decl. ¶ 36, at 15; MSJ at 1-22 (not disputing this fact). While working for Smith, Reeves earned between $800.00 to $900.00 every two weeks after expenses. <u>See</u> Reeves Decl. ¶ 37, at 15; MSJ at 1-22 (not disputing this fact).

On September 2, 2016, the Bernalillo County Metropolitan Court dismissed the state criminal complaint without prejudice, because Chafin did not appear in court. <u>See</u> Order Dismissing Criminal Complaint at 1, filed June 17, 2020 (Doc. 18-4). The charges were not refiled. <u>See</u> Reeves Decl. ¶¶ 29-38, at 12-16; see MSJ at 1-22 (not disputing this fact).

## ANALYSIS

Reeves brings two claims under § 1983: (i) Chafin "violated his constitutional right to be free from unlawful seizure by virtue of his unlawful arrest through a summons process"; and (ii) Chafin "violated his constitutional right . . . to due process of law for prosecuting him unlawfully." First Amended Complaint for Damages at 1, filed July 26, 2019 (Doc. 6)("First Amended Complaint")(no paragraph number). The Court concludes that (i) the statute of limitations bars Reeves' false arrest claim, but not the malicious prosecution claim; and (ii) Chafin is entitled to qualified immunity on both the false arrest and malicious prosecution claims, because (a) Chafin had probable cause that Reeves committed misdemeanor property damage, and (b) Chafin did not violate clearly established law. Accordingly, the Court grants the MSJ.

## I.   THE STATUTE OF LIMITATIONS BARS REEVES' CLAIM OF FALSE ARREST, BUT NOT REEVES' CLAIM OF MALICIOUS PROSECUTION, BECAUSE REEVES BROUGHT THIS CASE WITHIN THREE YEARS OF THE MALICIOUS PROSECUTION CLAIM'S ACCRUAL.

The Court first address the statute of limitations. The Court concludes that: (i) the statute of limitations bars Reeves' claim of false arrest, because Reeves brought this case three years after the false arrest claim's accrual; and (ii) the statute of limitations does not bar Reeves' malicious prosecution claim, because Reeves brought this case within three years of the malicious prosecution's cause of action's accrual, which occurred when the state criminal complaint was dismissed. "Civil-rights claims arising in New Mexico and brought under § 1983 are governed by a three-year statute of limitations." Amaro v. New Mexico, 737 F. App'x 882, 886 (10th Cir. 2018)(citing Varnell v. Dora Consol. Sch. Dist., 756 F.3d 1208, 1212 (10th Cir. 2014)(reiterating that "§ 1983 claims arising in New Mexico the limitations period is three years, as provided in New Mexico's statute of limitations for personal-injury claims")). "A § 1983 action accrues when facts that would support a cause of action are or should be apparent." Fogle v. Pierson, 435 F.3d

1252, 1258 (10th Cir. 2006).  Generally, "[§ ] 1983 claims accrue, for the purpose of the statute of

limitations, when the plaintiff knows or has reason to know of the injury which is the basis of his

action."  Johnson v. Johnson County Comm'n Bd., 925 F.2d 1299, 1301 (10th Cir. 1991).

As the United States Court of Appeals for the Tenth Circuit explains in Mondragon v.

Thompson,

> the statute of limitations for a Fourth Amendment claim for false arrest or
> imprisonment "begin[s] to run . . . when the alleged false imprisonment ends."
> Wallace v. Kato, 549 U.S. 384, 389 (2007)(internal quotation marks omitted).  The
> false imprisonment ends for these purposes either when the victim is released or
> when the victim's imprisonment becomes "pursuant to [legal] process -- when, for
> example, he is bound over by a magistrate or arraigned on charges."  Wallace v.
> Kato, 549 U.S. at 389 (emphasis omitted). Thus, either the date of release or the
> date of sufficient legal process starts the statute of limitations running for the Fourth
> Amendment claim.

Mondragon v. Thompson, 519 F.3d 1078, 1082-83 (10th Cir. 2008).  In contrast, for a claim of

malicious prosecution, "[b]ecause the statute of limitations does not start running before the

elements of a claim are satisfied, the statute of limitations for [a] due process claim" based on

malicious prosecution "cannot start until the plaintiff has achieved a favorable result in the original

action."  Mondragon v. Thompson, 519 F.3d at 1083 (footnote omitted).  See Myers v. Koopman,

738 F.3d 1190, 1195 (10th Cir. 2013)(holding that plaintiff "properly stated a Fourth Amendment

claim for malicious prosecution, which accrued [on the date when the district attorney dropped all

charges against him and] when the proceedings resolved in his favor[,]" and which "[h]e timely

filed"); id. ("A malicious-prosecution claim is not cognizable until all the elements are satisfied,

and one of the elements is that the original action terminated in favor of the plaintiff.").

Reeves does not take up the issue whether the statute of limitations bars his false arrest

claim, and it is unclear whether Reeves' contention is that the false arrest occurred on June 30,

2016, when Reeves declares that he was handcuffed,[4] or whether it occurred when Chafin issued

the criminal summons.  See Response at 3; Plaintiff's Reply to Defendant's Response to Plaintiff's

Motion for Further Extension to Respond to Defendant's Motion for Summary Judgment at 2-4,

filed February 10, 2021 (Doc. 46).  Reeves argues both that he was arrested at the June 30, 2016,

incident, see Response at 3 ("Plaintiff was detained in handcuffs, amounting to an arrest . . . ."),[5]

and that the subsequent July 6, 2016, criminal summons constitutes false arrest, see First Amended

Complaint at 1 (no paragraph numbering)(contending that Chafin "violated his constitutional right

to be free from unlawful seizure by virtue of his unlawful arrest through a summons process . . . .").

Under either timeframe, three years passed before Reeves filed the Complaint, meaning the statute

of limitations for § 1983 actions bars the false arrest claim.  See Mondragon v. Thompson, 519

F.3d at 1082-83.

In contrast to the false arrest claim, the cause of action for Reeve's malicious prosecution

accrued no earlier than September 2, 2016.[6]  See Mondragon v. Thompson, 519 F.3d at 1083.  See

---

[4]Reeves does not allege he was handcuffed in the First Amended Complaint; only in his declaration does he say that he was handcuffed.  See Reeves Decl. ¶ 25, at 10 ("On this June 30, 2016 occasion, Defendant Chafin initially spoke to me, had me handcuffed by another officer although I was in uniform and displaying my badge, and had informed him I was acting as a security officer."); Response at 3 ("Plaintiff was detained in handcuffs, amounting to an arrest . . . .").

[5]As the Court discusses in its analysis of the qualified immunity argument, see Analysis § II, infra, the Court concludes that it is a disputed fact whether Reeves was handcuffed.

[6]The state criminal complaint was dismissed without prejudice, allowing Chafin or the State of New Mexico to refile the state criminal complaint.  See Order Dismissing Criminal Complaint at 1.  Accordingly, if Chafin or the State of New Mexico chose to refile the charges, the statute of limitations for the malicious prosecution would be reset when that those proceedings terminated.  See Mondragon v. Thompson, 519 F.3d at 1083.  The statute of limitations for Reeves' charge to be prosecuted has since lapsed.  See N.M.S.A. § 30-1-8(E) (setting the statute of limitations "for a petty misdemeanor" at "one year from the time the crime was committed"); N.M.S.A. § 30-15-1 ("Whoever commits criminal damage to property is guilty of a petty

also Myers v. Koopman, 738 F.3d at 1195 (holding that the plaintiff "properly stated a Fourth Amendment claim for malicious prosecution, which accrued" on the date when the district attorney dropped all charges against him and "when the proceedings resolved in his favor," and which "[h]e timely filed"); McKnight v. City of Topeka, Kansas, No. 19-2353-DDC-GEB, 2020 WL 1320724, at *3 (D. Kan. March 20, 2020)(Crabtree, J.)(concluding that the statute of limitations began to accrue for a malicious prosecution claim when the court granted the motion to dismiss the indictment); Birdsong v. Unified Gov't of Wyandotte Cty., No. 13-2090-JAR, 2014 WL 105509, at *8 (D. Kan. Jan. 10, 2014)(Robinson, J.)(holding that a plaintiff's § 1983 claim for malicious prosecution accrued when the state court dismissed the criminal case against him in its entirety). Accordingly, Reeves malicious prosecution claim is not time barred, because Reeves filed the Complaint within three years of the cause of action's accrual.

## II.   CHAFIN IS ENTITLED TO QUALIFIED IMMUNITY, BECAUSE CHAFIN'S ACTIONS DID NOT VIOLATE REEVES' CONSTITUTIONAL RIGHTS, AND CHAFIN DID NOT VIOLATE CLEARLY ESTABLISHED LAW.

Chafin asserts a qualified immunity defense, arguing that, because Chafin did not seize Reeves, both of Reeves' claims fail.  See MSJ at 11.  Reeves argues, in response, that Chafin's actions were motivated racially and that "qualified immunity should be reconsidered by the Supreme Court and eliminated and, until then, should not be applied to bar this suit for violation of Plaintiff's constitutional right."   Response at 1.[7]  Although the Court has criticized the Supreme

---

misdemeanor, except that when the damage to the property amounts to more than one thousand dollars ($1,000) he is guilty of a fourth degree felony.").

[7]Reeves' filed his Response three weeks late; nonetheless, the Court will consider Reeves' arguments, because the Tenth Circuit encourages district courts to decide issues on the merits and not on a procedural  failure, the Court will exercise its discretion and decide the issues on the merits.  See Clerk's Minutes at 1, filed February 11, 2021 (Doc. 49)(setting a February 25, 2021, deadline for Reeves' response); Motion for Extension on Response to SMJ at 1-4 (acknowledging that the Response was filed late and belatedly asking for an extension).

Court of the United States' approach to qualified immunity's clearly established prong, the Court must follow binding precedent from the Tenth Circuit and the Supreme Court. See, e.g., Caldwell v. Univ. of New Mexico Bd. of Regents, No. CIV 20-0003 JB/JFR, 2020 WL 7861330, at *29 n.14 (D.N.M. Dec. 31, 2020)("The Court disagrees with the Supreme Court's approach. The most conservative, principled decision is to minimize the expansion of the judicially created clearly established prong, so that it does not eclipse the congressionally enacted § 1983 remedy."). Qualified immunity shields government officials from liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009)(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Qualified immunity also shields officers who have "reasonable, but mistaken beliefs," and operates to protect officers from the sometimes "'hazy border[s]'" of the law. Saucier v. Katz, 533 U.S. 194, 206 (2001)(quoting Priester v. Riviera Beach, 208 F.3d 919, 926 (11th Cir. 2000)). Because Chafin asserts qualified immunity, Reeves must demonstrate: (i) that Chafin's actions violated his constitutional or statutory rights; and (ii) that the rights were clearly established at the time of the alleged misconduct. See Riggins v. Goodman, 572 F.3d 1101, 1107 (10th Cir. 2009). See also Pueblo of Pojoaque v. New Mexico, 214 F. Supp. 3d 1028, 1079 (D.N.M. 2016)(Browning, J.), aff'd, 863 F.3d 1226 (10th Cir. 2017).

A.   **CHAFIN IS ENTITLED TO QUALIFIED IMMUNITY ON THE FALSE ARREST CLAIM, BECAUSE CHAFIN HAD PROBABLE CAUSE AND REEVES' RIGHTS WERE NOT CLEARLY ESTABLISHED.**

The Court concludes that Chafin is entitled to qualified immunity on the false arrest claim, because (i) Chafin did not violate Reeves' constitutional rights, given that Chafin had probable cause to arrest Reeves from property damage under N.M.S.A. § 30-15-1; and (ii) Reeves's rights were not clearly established. Reeves alleges that Chafin "violated his constitutional right to be free from unlawful seizure by virtue of his unlawful arrest through a summons process." First

Amended Complaint at 1 (no paragraph numbering).

> As for the false arrest claim . . . [it] is constitutional if the officer has probable cause to believe that the person arrested has committed a crime. See Romero v. Fay, 45 F.3d 1472, 1476 (10th Cir. 1995). "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." Romero v. Fay, 45 F.3d at 1476 (internal quotation marks omitted). "When a warrantless arrest is the subject of a § 1983 action, the defendant arresting officer is entitled to [qualified] immunity if a reasonable officer could have believed that probable cause existed to arrest the plaintiff." Romero v. Fay, 45 F.3d at 1476 (internal quotation marks omitted). To prove a false arrest, therefore, the plaintiff must allege that the arresting officer acted without probable cause.

Howl v. Alvarado, 783 F. App'x 815, 818 (10th Cir. 2019). Chafin argues that he did not seize Reeves, because he never arrested Reeves, meaning the claim of false arrest necessarily fails. See MSJ at 13. See also Reeves Decl. ¶ 27, at 11 (not disputing that Chafin did not arrest him, and stating that Chafin "informed me that he believed he had probable cause to arrest me but was going to issue me a summons . . ."). Chafin also contends that, without citation to the record, that "[i]t is . . . undisputed that Plaintiff was not handcuffed at the scene of his incident," but Reeves, in his declaration, declares otherwise, see Reeves Decl. ¶ 25, at 10 ("Chafin initially spoke to me, had me handcuffed by another officer . . . [, and] I remained handcuffed . . . in the custody of two other police officers for about 8 minutes . . . ."). See also Axon BWC Videos 1-5. From these disputed facts, it is unclear whether Chafin seized Reeves.[8] "A police officer may seize someone either by

---

[8]Although Chafin recorded much of the June 30, 2016, incident on his Axon BWC, not every moment is captured, and Chafin does not provide the BWC footage from the officers that were with him at the time. See Axon BWC Video 1 (providing just under seventeen minutes of footage from when Chafin arrived on scene); Axon BWC Video 2 (providing about eight minutes of footage of Chafin and Reeves speaking and about nine minutes of footage of Chafin talking to the owner of the damaged property); Axon BWC Video 3 (providing about nine minutes of footage of Chafin interviewing a witness with Reeves seated nearby). Although none of the BWC footage shows Chafin handcuffing Reeves or suggests that Reeves was handcuffed by another officers while Chafin was interviewing witnesses, the BWC footage does not document the entire encounter as portions are missing, Reeves is not in-frame at all times, and the footage does not show how the other officers treated Reeves while Chafin is elsewhere. Compare Axon BWC

Video 1; Axon BWC Video 2; Axon BWC Video 3, with  Reeves Decl. ¶¶ 18-28, at 5-11.  The Court concludes, therefore, that Chafin's BWC is not conclusive of what occurred, and the Court cannot disregard Reeves' version of the events on summary judgment, because the BWC footage does not clearly contradict Reeves declaration.  See Fed. Rule Civ. Proc. 56(c) (requiring that, at the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party when there is a "genuine" dispute as to those facts).  Cf. Scott v. Harris, 550 U.S. 372, 378-81 (2007)(concluding that summary judgment is appropriate where video evidence quite clearly contradicted the plaintiff's version of the facts, stating that "[r]espondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him.").  See Wouter Zwart, Note, Slow Your Roll Out of Body-Worn Cameras: Privacy Concerns and the Tension Between Transparency and Surveillance in Arizona, 60 Ariz. L. Rev. 783, 795 (2018)(discussing the use and objectivity of BWC footage in light of Scott v. Harris).  In Scott v. Harris, 550 U.S. 372 (2007), the Supreme Court of the United States of America stated that:

> "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986).  When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.  That was the case here with regard to the factual issue whether respondent was driving in such fashion as to endanger human life.  Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him.  The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape

Scott v. Harris, 550 U.S. at 380-81 (emphases in original).  In Scott v. Harris, the Supreme Court concluded that the video record clearly contradicted the plaintiff's version of events.  See 550 U.S. at 380-81.  The Supreme Court, therefore, held that a court may not adopt a "blatantly contradicted" version of the facts at the summary judgment stage.  550 U.S. at 380-81.  Similarly, the United State Court of Appeals for the Tenth Circuit also has concluded that, where an audio recording of an event "'blatantly contradicts'" a plaintiff's version of the facts at the summary judgment stage, the court should not adopt the plaintiff's version of the facts to the extent that the audio recording "'blatantly contradicted'" them.   York v. City of Las Cruces, 523 F.3d 1205, 1210-11 (10th Cir. 2008)(quoting Scott v. Harris, 550 U.S. at 380(concluding that a tape recording which only captured part of the events and was often unintelligible did not blatantly contradict the plaintiff's version of the evidence).  See Cordero v. Froats, 613 F. App'x 768, 769 (10th Cir. 2015)(explaining that, in a police shooting case, although evidence -- including a video, audio recordings, and physical evidence -- undermined the plaintiff's witnesses, the video did not contradict blatantly the plaintiff's version of events, because the video did not show clearly the plaintiff holding a gun)(citing Scott v. Harris, 550 U.S. at 380).  Here, unlike in Scott v. Harris, the BWC footage does not "blatantly contradict" Reeves' statements, therefore,  the Court concludes that the facts regarding the handcuffs are disputed facts for summary judgment.  Scott v. Harris, 550 U.S. at 380.  To the extent there is any doubt as to what happened off camera, the Court is obligated to resolve it in favor of Reeves, the non-moving party, considering that Reeves'

physical force or a show of authority." United States v. Roberson, 864 F.3d 1118, 1121 (10th Cir. 2017)(citing United States v. Salazar, 609 F.3d 1059, 1064 (10th Cir. 2010)).  "[W]hen an officer does not apply physical force to restrain a subject, a Fourth Amendment seizure occurs only if (a) the officer shows his authority; and (b) the citizen 'submits to the assertion of authority.'" United States v. Salazar, 609 F.3d at 1064 (quoting California v. Hodari D., 499 U.S. 621, 626 (1991)).  The general rule is that "the use of firearms, handcuffs, and other forceful techniques" is sufficiently intrusive to signal that a person has been placed under arrest.  United States v. Melendez-Garcia, 28 F.3d 1046, 1052-53 (10th Cir. 1994).  See Florida v. Royer, 460 U.S. 491, 499 (1983).  The use of handcuffs, however, does not always elevate a detention into an arrest. See United States v. Albert, 579 F.3d 1188, 1195 (10th Cir. 2009)("[W]e have approved the use of handcuffs in the context of a Terry stop."); United States v. Reyes-Vencomo, 866 F. Supp. 2d 1304, 1330 (D.N.M. 2012)(Browning J.)("The use of handcuffs . . . does not always elevate a detention into an arrest.").  Reeves argues he was arrested, see Response at 3 ("Plaintiff was detained in handcuffs, amounting to an arrest . . . ."), and suggests also that the criminal summons constitutes false arrest, see First Amended Complaint at 1 (no paragraph numbering)(Chafin "violated his constitutional right to be free from unlawful seizure by virtue of his unlawful arrest

---

version of events is otherwise consistent with the BWC footage, and there is no BWC footage of Reeves when Reeves claims he was handcuffed, which was while Chafin was interviewing the property owner.  See Hunt v. Cromartie, 526 U.S. 541, 550-55 (1999)(holding that the court must resolve all reasonable inferences and doubts in the nonmoving party's favor and construe all evidence in the light most favorable to the nonmoving party); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)("Liberty Lobby")("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.")(citation omitted).  It is not the Court's role to decide whether Reeves' allegation is likely, based on inferences drawn from the partial footage or from Reeves' credibility, as long as it is not "blatantly contradicted" by the BWC footage.  Scott v. Harris, 550 U.S. at 380.  See Liberty Lobby, 477 U.S. at 255 (holding that the court cannot decide any issues of credibility on summary judgment).

through a summons process . . . .").[9]  Even if the use of handcuffs and the show of force -- disputed

facts[10] -- are sufficient to constitute an arrest, that is not the end of the inquiry, because even if

Reeves was handcuffed, and the incident amounted to an arrest, Reeves must show that Chafin did

not have probable cause to prevail on a claim of false arrest.  See Howl v. Alvarado, 783 F. App'x

at 818; Lewis v. Rock, 48 F. App'x 291, 294 (10th Cir. 2002)("[T]the controlling inquiry[, for

false arrest,] is whether [the plaintiff] put forth sufficient evidence to raise a genuine issue of

material fact for trial as to whether [the defendant] had probable cause to support his affidavit and

the application for the arrest warrant.")(citing Taylor v. Meacham, 82 F.3d 1556, 1561 (10th Cir.

1996)).

Although the central thrust of Reeves' argument is that the June 30, 2016, incident was

racially motivated, see Reeves Decl. ¶¶ 23-24, at 8-10 (detailing several encounters with Chafin

before the June 30, 2016, incident where Chafin "would sometimes draw his gun toward me[, and]

. . . address[] me in a derogatory and frequently racist fashion," including calling him the n-word),

Reeves admits that the probable cause inquiry is an objective standard, "devoid of any intent

---

[9]The Tenth Circuit has "conclude[d] that the issuance of a citation, [under N.M.S.A. § 31-1-6(A),] even under threat of jail if not accepted, does not rise to the level of a Fourth Amendment seizure."  Martinez v. Carr, 479 F.3d 1292, 1299 (10th Cir. 2007)(comparing its conclusion to other Courts of Appeals).  See Lewis v. Rock, 48 F. App'x 291, 294 (10th Cir. 2002)(unpublished)("Because [the plaintiffs] have not shown they sustained any other deprivations of liberty in connection with their receipt of the summonses, they have failed to show they were seized in violation of the Fourth Amendment.").  See also Britton v. Maloney, 196 F.3d 24, 29-30 (1st Cir. 1999)(reasoning that "Terry cannot be read to mean that the issuance of a summons (any more than a testimonial subpoena or a call to jury duty) would constitute a seizure simply because it threatens a citizen with the possibility of confinement if he fails to appear in court."); Technical Ordnance, Inc. v. United States, 244 F.3d 641, 651 (8th Cir. 2001)("This circuit has never held that pretrial restrictions such as [being forced to post bond, appear before court, and answer charges] constitute a Fourth Amendment seizure."); 3 Wayne R. LaFave, Search & Seizure § 5.1(i), at 77 (4th ed. 2004)(the "[r]esort to the citation alternative is not in and of itself an arrest or, for that matter, any variety of Fourth Amendment seizure.").

[10]See Note 8, supra.

factor," Response at 2.  See Beck v. Ohio, 379 U.S. 89, 96 (1964)(concluding that probable cause is measured against an objective standard).  "The subjective belief of an individual officer as to whether there was probable cause for making an arrest is not dispositive."  United States v. Valenzuela, 365 F.3d at 896-97 (citing Florida v. Royer, 460 U.S. 491, 507 (1983); United States. v. Treto-Haro, 287 F.3d 1000, 1006 (10th Cir. 2002)).  Thus, the primary consideration is "whether a reasonable officer would have believed that probable cause existed to arrest the defendant based on the information possessed by the arresting officer."  Olsen v. Layton Hills Mall, 312 F.3d 1304, 1312 (10th Cir. 2002)(internal quotation marks and alterations omitted).  "[T]he probable cause standard . . . requires officers to reasonably interview witnesses readily available at the scene, investigate basic evidence, or otherwise inquire if a crime has been committed at all before invoking the power of a warrantless arrest and detention."  Romero v. Fay, 45 F.3d 1472, 1476-77 (10th Cir. 1995).[11]

The Court concludes that Chafin had probable cause to believe that Reeves had intentionally damaged property, because (i) Chafin interviewed multiple witnesses, (ii) Reeves admitted to moving the property, and (ii) the property had been damaged.  See Police Report at 2;

_____

[11]In a previous § 1983 malicious prosecution claim, the Court relied on Tenth Circuit law to define probable cause:

> In this § 1983 action, "[w]hile it is true that state law with respect to arrest is looked to for guidance as to the validity of the arrest since the officers are subject to those local standards, it does not follow that state law governs."  Wilder v. Turner, 490 F.3d 810, 814 (10th Cir. 2007).  Thus, Tenth Circuit § 1983 precedent binds the Court.  Wilder v. Turner, 490 F.3d at 814 ("Nor, perhaps more importantly, are we bound by a state court's interpretation of federal law -- in this case the Fourth Amendment.").  The Court, however, looks to New Mexico caselaw to determine what the underlying state law charges' elements are. See Wilder v. Turner, 490 F.3d at 814.

McGarry v. Bd. of Cty. Commissioners for Cty. of Lincoln, 294 F. Supp. 3d 1170, 1203 (D.N.M. 2018)(Browning, J.).

Axon BWC Video 1 at 2:50-9:55 (documenting Chafin arriving on scene and questioning Reeves, who explained that he moved the property off the parking lot); Axon BWC Video 1 at 10:00-16:55 (documenting Chafin interviewing the property owner and other witnesses); Axon BWC Video 3 (documenting Chafin interviewing a witness with Reeves present); Axon BWC Video 4 (documenting Chafin's phone call with a witness, describing damage to the items); Axon BWC Video 5 (documenting Chafin's phone call with a witness, Reeves' employee); N.M.S.A. § 30-15-1 ("Criminal damage to property consists of intentionally damaging any real or personal property of another without the consent of the owner of the property.").  Chafin arrived on scene after being dispatched to respond to a call that a man had thrown and damaged property.  See Police Report at 2; Reeves Decl. ¶ 19, at 6-7; Axon BWC Video 1 at 2:50-9:55.  Chafin talked to Reeves, who identified himself as the security company owner for the hotel, and Reeves denied damaging any of the items, suggested that it was homeless people who had caused any damage, and stated that he had a witness and camera footage showing that he had not caused any damage.  See Police Report at 2; Reeves Decl. ¶¶ 18-27, at 6-11; Reeves Decl. ¶ 19, at 6-7 (stating that Reeves had moved the property, including "toss[ing]" "some . . . lighter" property, that "could be tossed . . . without causing any damage," and otherwise disputing damaging any property); Axon BWC Video 1 at 0:30-9:55.  Reeves showed Chafin pictures of the property and in his police report, Chafin writes that Reeves "show[ed] me pictures of the items stacked around the time that he moved them. They did not appear to be damaged but there was nothing to show they were not moved after the pictures."  Police Report at 2.  See Reeves Decl. ¶ 26, at 11 (stating Reeves showed Chafin pictures); Axon BWC Video 1 at 6:30-9:30 (documenting Reeves showing Chafin pictures).  After investigating the scene and the interviewing the property owner, who wanted to press charges, Chafin informed Reeves that, although he had probable cause to arrest Reeves, he would instead

charge Reeves with misdemeanor criminal damage.  See Police Report at 2-3; Reeves Decl. ¶ 27, at 11; Axon BWC Video 2 at 0:30-9:00.  Next, Chafin talked to a witness, a resident of the hotel, who stated that he had seen the incident.  See Police Report at 2; Reeves Decl. ¶ 27, at 11; Axon BWC Video 3 at 2:20-8:45 (documenting the interaction).  Chafin called another witness, who described damage to the items.  See Axon BWC Video 4 (documenting Chafin's phone call with the witness).  The next day, Chafin talked to Reeves' employee, Dawn Weeber, who had notified Reeves of the property on the parking lot and who had witnesses part of the incident.  See Police Report at 2-3; Reeves Decl. ¶ 28, at 11; Axon BWC Video 5 at 2:50-9:55.  On July 6, 2016, Chafin filed a state criminal complaint and summons, charging Reeves for misdemeanor criminal property damage less than $1,000.00, in violation of N.M.S.A. § 30-15-1.  See Criminal Summons at 1, filed June 17, 2020 (Doc. 18-3).

Because Chafin interviewed multiple witnesses, Reeves admitted to moving the property, and the property had been damaged, the Court concludes that Chafin had probable cause to arrest Reeves and issue the state criminal summons.  See Romero v. Fay, 45 F.3d 1472, 1476 ("Even law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity.")(quoting Hunter v. Bryant, 502 U.S. 224, 228-29 (1991)); Romero v. Fay, 45 F.3d at 1476 ("Plaintiff's burden [on summary judgment] required him to show that the statements supplied by [the witnesses] did not constitute reasonably trustworthy information sufficient to lead a prudent police officer to conclude that Plaintiff" committed the crime.); id. at 1476-77 ("[T]the probable cause standard of the Fourth Amendment requires officers to reasonably interview witnesses readily available at the scene, investigate basic evidence, or otherwise inquire if a crime has been committed at all before invoking the power of warrantless

arrest and detention.").[12]  Turning to the clearly established prong, Reeves cites no cases to support

his argument that Chafin falsely arrested him.  See Response at 1-20.  The Court concludes Chafin

did not violate Reeves' clearly established rights.  See, e.g., Price v. Cochran, 66 F. App'x 781,

787-88 (10th Cir. 2003)(concluding that a plaintiff's warrantless arrest claim failed and that the

officers had probable cause to arrest him, because witnesses identified him as the person who had

shot the victim, despite the plaintiff's contention that the witnesses were not credible).  See also

Lobozzo v. Colo. Dep't Of Corr., 429 Fed. App'x. 707, 710 (10th Cir. 2011)(concluding that, to

be clearly established, the right must be "so thoroughly developed and consistently recognized

---

[12]The Tenth Circuit in Romero v. Fay cites several cases where an officer lacked probable cause for failure to investigate:

> Clipper v. Takoma Park, Md., 876 F.2d 17, 19-20 (4th Cir. 1989)(officer lacked probable cause to arrest plaintiff in bank robbery case where officer ignored witnessing officer's comment that he was not sure plaintiff was robber, failed to view the surveillance film from the robbery, and failed to interview alibi witnesses); Sevigny v. Dicksey, 846 F.2d 953, 956-58 (4th Cir. 1988)(officer lacked probable cause to arrest where he unreasonably failed to interview witness at scene of automobile accident who would have corroborated plaintiff's version of story); Wagenmann v. Adams, 829 F.2d 196, 206-09 (1st Cir. 1987)(officers lacked probable cause to arrest plaintiff for disturbing the peace based solely on unsubstantiated rumor and hearsay without first determining if crime had been committed at all); BeVier v. Hucal, 806 F.2d 123, 128 (7th Cir. 1986) (officer lacked probable cause to arrest parents for child neglect where he unreasonably failed to interview parents, baby-sitter, and other witnesses at scene to determine if offense had been committed at all); Moore v. Marketplace Restaurant, Inc., 754 F.2d 1336, 1345-47 (7th Cir. 1985)(officers' failure to interview plaintiffs to determine if offense had been committed at all before arresting them for theft of restaurant services presented jury question whether facts supplied probable cause to arrest); Lusby v. T.G. & Y. Stores, Inc., 749 F.2d 1423, 1432 (10th Cir. 1984)(officer lacked probable cause to arrest plaintiff for shoplifting by unreasonably refusing to interview cashier at scene who would have confirmed plaintiff had paid for alleged stolen sunglasses), vacated on other grounds sub nom. City of Lawton, Okla. v. Lusby, 474 U.S. 805 (1985), aff'd after reconsideration, 796 F.2d 1307 (10th Cir.), cert. denied, 479 U.S. 884 (1986).

Romero v. Fay, 45 F.3d at 1476 n.2.

under the law of the jurisdiction as to be 'indisputable' and 'unquestioned.'")(quoting Zweibon v. Mitchell, 720 F.2d 162, 172-73 (D.C. Cir. 1983)); Pierce v. Gilchrist, 359 F.3d 1279, 1298 (10th Cir. 2004)(concluding that the Court must ask "whether the law put officials on fair notice that the described conduct was unconstitutional").  Accordingly, the Court concludes that Chafin is entitled to qualified immunity on Reeves' false arrest claim.

**B.     CHAFIN IS ENTITLED TO QUALIFIED IMMUNITY ON THE MALICIOUS PROSECUTION CLAIM, BECAUSE, EVEN THOUGH REEVES SATISFIES ELEMENTS ONE, TWO, FOUR, AND FIVE OF A § 1983 MALICIOUS PROSECUTION CLAIM, CHAFIN HAD PROBABLE CAUSE.**

Next, the Court concludes that Chafin is entitled to qualified immunity on the malicious prosecution claim, because (i) Chafin did not violate Reeves' constitutional rights, because Reeves on summary judgment can only establish four of the five malicious prosecution elements; and (ii) Reeves's rights were not clearly established.  Reeves argues that Chafin "violated his constitutional right . . . to due process of law for prosecuting him unlawfully."  First Amended Complaint at 1 (no paragraph numbering).  Under Tenth Circuit case law, a § 1983 malicious prosecution claim has five elements: (i) the defendant caused the plaintiff's continued confinement or prosecution; (ii) the original action terminated in favor of the plaintiff; (iii) no probable cause supported the original arrest, continued confinement, or prosecution; (iv) the defendant acted with malice; and (v) the plaintiff sustained damages.  See Wilkins v. DeReyes, 528 F.3d 790, 799 (10th Cir. 2008)("Wilkins").  In a Fourth Amendment malicious-prosecution case, "the third element deals only with the probable cause determination during the institution of legal process . . . ."  Wilkins, 528 F.3d at 799.

Chafin argues that Reeves cannot satisfy the second, third, and fourth elements; Chafin does not dispute that Reeves satisfies the first or fifth elements.  See MSJ at 16-19.  The Court agrees that Chafin instigated the proceedings by filing the state criminal complaint, satisfying the

first element.  <u>See</u> Criminal Summons at 1.  Turning to the second element, the Tenth Circuit

explains:

> "Criminal proceedings are terminated in favor of the accused by the formal abandonment of the proceedings by the public prosecutor." Restatement (Second) of Torts § 659(c) (1977).[13]  But abandonment of the proceedings is ordinarily insufficient to constitute a favorable termination if "the prosecution [is] abandoned pursuant to an agreement of compromise with the accused; . . . because of misconduct on the part of the accused . . . ; [or] out of mercy requested or accepted by the accused." <u>Id.</u> § 660.  These reasons for withdrawal of a charge do not necessarily constitute favorable terminations because they do not "indicate the innocence of the accused" or are at least "consistent with guilt." <u>Id.</u> cmt. a.

> On the other hand, the inability of a prosecutor to prove a case beyond a reasonable doubt at trial can be consistent with the innocence of the accused and can be deemed a favorable termination in favor of the accused.  <u>Id.</u> cmt. d. Concluding a case cannot be proven beyond a reasonable doubt, a prosecutor might withdraw a criminal charge. One way to do this is to abandon or suspend a prosecution by "enter[ing] a nolle prosequi after an indictment has been found." <u>Id.</u> cmt. b.

> . . .

> [To determine] a favorable termination, we look to the stated reasons for the dismissal as well as to the circumstances surrounding it in an attempt to determine whether the dismissal indicates the accused's innocence.  <u>Logan v. Caterpillar, Inc.</u>, 246 F.3d 912, 925 (7th Cir. 2001)("To determine whether the proceedings against [the defendant] were terminated in his favor, we must look past the form or title of

---

[13]The Restatement (Second) of Torts § 659 provides:

Criminal proceedings are terminated in favor of the accused by

  (a)   a discharge by a magistrate at a preliminary hearing, or

  (b)   the refusal of a grand jury to indict, or

  (c)   the formal abandonment of the proceedings by the public prosecutor, or

  (d)   the quashing of an indictment or information, or

  (e)   an acquittal, or

  (f)   a final order in favor of the accused by a trial or appellate court.

Restatement (Second) of Torts § 659.

the disposition and examine the circumstances surrounding the entry of the nolle prosequi."). "The plaintiff has the burden of proving a favorable termination." Washington v. Summerville, 127 F.3d 552, 557 (7th Cir. 1997). To that end, a "bare nolle prosse without more is not indicative of innocence." Id. at 558. The "dispositive inquiry is whether the failure to proceed implies a lack of reasonable grounds for the prosecution." Murphy v. Lynn, 118 F.3d 938, 948 (2d Cir. 1997)(internal quotations and brackets omitted).

Wilkins, 528 F.3d at 802-03 (footnote omitted)(concluding that a "nolle proseques should be considered terminations in favor of Plaintiffs"). See Cordova v. City of Albuquerque, 816 F.3d 645, 654 (10th Cir. 2016)(reiterating that "[t]he question we must ask is whether the dismissal was indicative of innocence," and concluding that "the dismissal of the underlying assault charges under New Mexico's Speedy Trial Act was not indicative of [the plaintiff's] innocence").[14]  Here

---

[14]The Tenth Circuit explains:

[A] plaintiff generally cannot maintain a malicious prosecution action unless his charges were dismissed in a manner indicative of innocence, even when he was entitled to dismissal on statutory or constitutional grounds. Although this rule may produce a dilemma for defendants at least in some applications, it is both a standard feature of the tort of malicious prosecution and a reflection of the idea that malicious prosecution actions are disfavored at common law. See Hernon v. Revere Copper & Brass, Inc., 494 F.2d 705, 707 (8th Cir. 1974)("[T]he general rule is that suits for malicious prosecution are viewed with disfavor and are to be carefully guarded against.").

A speedy trial dismissal, moreover, is unlike the *nolle prosequi* in Wilkins, in which the prosecution merely dropped the charges. This action by the prosecution is ambiguous, in that we cannot know the reasons for dropping the charges. Here, by contrast, the state court unambiguously granted a motion to dismiss the charges against Cordova. But this distinction is irrelevant. The question we must ask is whether the dismissal was indicative of innocence. It cannot be the case that all dismissals that result from granted motions are favorable terminations for purposes of malicious prosecution actions. The dismissal here does not indicate Cordova's innocence, so it is not a favorable termination.

The favorable termination requirement thus serves as a useful filtering mechanism, barring actions that have not already demonstrated some likelihood of success. Although the traditional requirement may bar some meritorious actions, where prosecutorial delay *does* indicate the innocence of the accused the plaintiff will not be barred from bringing his malicious prosecution claim under our rule.

Chafin, and the State, chose to abandon their effort to prosecute Reeves when Chafin did not show up in court and the state court dismissed the charges without prejudice.  See Order Dismissing Criminal Complaint at 1.  Although a dismissal without prejudice is not necessarily indicative of Reeves' innocence, because the charge could be refiled, see Order Dismissing Criminal Complaint at 1, Chafin and the State chose not to proceed and the statute of limitations for Reeves' charge to be prosecuted has long since lapsed, see N.M.S.A. § 30-1-8(E) (setting the statute of limitations "for a petty misdemeanor" at "one year from the time the crime was committed"); N.M.S.A. § 30-15-1 ("Whoever commits criminal damage to property is guilty of a petty misdemeanor, except that when the damage to the property amounts to more than one thousand dollars ($1,000) he is guilty of a fourth degree felony.").  Because "abandonment of the proceedings is ordinarily insufficient to constitute a favorable termination," Wilkins, 528 F.3d at 802, the Court "look[s] to the stated reasons for the dismissal as well as to the circumstances surrounding it in an attempt to determine whether the dismissal indicates the accused's innocence," Wilkins, 528 F.3d at 803.  None of the reasons why an "abandonment of the proceedings is ordinarily insufficient to constitute a favorable termination" are reflected in the record before the Court: (i) "'the prosecution [has not] abandoned pursuant to an agreement of compromise with the accused;" (ii) there is no "misconduct on the part of the accused'"; (iii) nor has the prosecution abandoned the proceedings "'out of mercy requested or accepted by the accused.'"  Wilkins, 528 F.3d at 802-03 (quoting Restatement (Second) of Torts § 660).[15]  Because none of the factors in Wilkins or Restatement

---

Cordova v. City of Albuquerque, 816 F.3d 645, 653-54 (10th Cir. 2016)(emphasis in the original).

[15]According to the Restatement (Second) of Torts § 660,

[a] termination of criminal proceedings in favor of the accused other than by acquittal is not a sufficient termination to meet the requirements of a cause of action for malicious prosecution if

(Second) of Torts § 660 are reflected in the record, and because there is no an indication that it would be impractical for Chafin or for the State to refile the charge, the Court concludes, drawing all reasonable inferences in favor of Reeves, that the proceedings terminated in Reeves' favor, satisfying the second element of malicious prosecution.[16]

Turning to the third element -- the absence of probable cause -- the Court has already concluded that Chafin had probable cause to arrest Reeves for property damage.  See, e.g.,

---

(a)   the charge is withdrawn or the prosecution abandoned pursuant to an agreement of compromise with the accused; or

(b)   the charge is withdrawn or the prosecution abandoned because of misconduct on the part of the accused or in his behalf for the purpose of preventing proper trial; or

(c)   the charge is withdrawn or the proceeding abandoned out of mercy requested or accepted by the accused; or

(d)   new proceedings for the same offense have been properly instituted and have not been terminated in favor of the accused.

Restatement (Second) of Torts § 660.

[16]The only cases that the Court's research has uncovered deciding whether a dismissal without prejudice, because the prosecutor did not appear, indicates innocence are from Illinois state courts.  Theses apply the same elements as set forth in Wilkins, and arrive at the same conclusion as the Court.  See, e.g., Swick v. Liautaud, 662 N.E. 2d 1238, 1242-43 (Ill. 1996))(concluding that "a criminal proceeding has been terminated in favor of the accused . . . via a *nolle prosequi*[ ] unless the abandonment is for reasons not indicative of the innocence of the accused"); Boyd v. City of Chicago, 880 N.E.2d 1033, 1035 (Ill. App. Ct. 2007)(concluding that the plaintiff satisfied the favorable termination element, where the criminal proceedings terminated when the police officer did not appear on the fourth court date (the officer appeared at the first three), because none of the exceptions enumerated in Swick v. Liautaud or the Restatement (Second) of Torts § 659(c) were met); Velez v. Avis Rent A Car Sys., Inc., 721 N.E. 2d 652, 656 (Ill. App. Ct. 1999)(concluding that the plaintiff satisfied the favorable termination element, where criminal charges had twice been stricken with leave to reinstate and that the prosecution was barred from recharging the case by both the expiration of the statute of limitations and speedy-trial provisions).  See also Alexander v. Zinchuk, No. 08 C 06688, 2017 WL 11567893, at *12 (N.D. Ill. Apr. 23, 2017)(Chang, J.)(applying Illinois law and stating that "other facts can undermine the usual characterization of stricken-with-leave as a favorable termination").

Stonecipher v. Valles, 759 F.3d 1134, 1147 (10th Cir. 2014)(explaining that an officer who filed a criminal complaint was entitled to qualified immunity on malicious prosecution claim because he acted in an objectively reasonable manner and the plaintiff could not demonstrate that the officer lacked arguable probable cause).

The fourth element of a malicious prosecution claim is that the defendant acted with malice. See Wilkins, 528 F.3d at 799.  The parties here do not cite to either Tenth Circuit or New Mexico law to define malice.  See MSJ at 19; Response at 1-20.  In 1996, the Tenth Circuit explained that "our circuit takes the common law elements of malicious prosecution as the 'starting point' for the analysis of a § 1983 malicious prosecution claim, but always reaches the ultimate question, which it must, of whether the plaintiff has proven a *constitutional* violation."  Taylor v. Meacham, 82 F.3d 1556, 1560-61 (10th Cir. 1996)(emphasis in the original)(no citation for quotation).[17]

---

[17]The Tenth Circuit, in Taylor v. Meacham, discusses at length § 1983 malicious prosecution claim:

> While most circuit courts recognize that a malicious prosecution claim is cognizable under § 1983, differences arise over the elements necessary to establish such a claim.  Some courts hold that the "elements of liability for the constitutional tort of malicious prosecution under § 1983 coincide with those of the common law tort."  Lee v. Mihalich, 847 F.2d 66, 70 (3d Cir. 1988); see also Eugene v. Alief Indep. Sch. Dist., 65 F.3d 1299, 1303 (5th Cir. 1995)("This circuit has explicitly held that malicious prosecution, false arrest and bodily harm are actionable under Section 1983 because they violate the Fourth and Fourteenth Amendments."); Cook v. Sheldon, 41 F.3d 73, 79 (2d Cir. 1994)("Though section 1983 provides the federal claim, we borrow the elements of the underlying malicious prosecution tort from state law."); Strength v. Hubert, 854 F.2d 421, 425-26 (11th Cir. 1988).  Other courts require the showing of an injury of a constitutional magnitude, as well as the traditional elements of the state tort of malicious prosecution.  See Singer v. Fulton County Sheriff, 63 F.3d 110, 116 (2d Cir. 1995)("'In some cases, the interests protected by a particular branch of the common law of torts may parallel closely the interests protected by a particular constitutional right;' still, it is only the violation of the constitutional right that is actionable and compensable under § 1983.")(quoting Carey v. Piphus, 435 U.S. 247, 258 (1978)), cert. denied, -- U.S. -- , 116 S.Ct. 1676 (1996); Kohl v. Casson, 5 F.3d 1141, 1145 (8th Cir. 1993)("This claim fails because a claim of malicious prosecution, without more, does not state a claim under 42 U.S.C. § 1983, which provides redress only for federal

constitutional or statutory violations."); Mahoney v. Kesery, 976 F.2d 1054, 1060 (7th Cir. 1992)(holding that although "malicious prosecution as such" is not actionable under the Constitution, it "can be a link in a chain showing a deprivation of liberty or property without due process of law"); Torres v. Superintendent of Police, 893 F.2d 404, 409 (1st Cir. 1990)(plaintiff alleging malicious prosecution claim must prove elements of state malicious prosecution tort but also must show the "misuse of the legal proceedings . . . so egregious as to subject the individual to a deprivation of a constitutional dimension"); Coogan v. City of Wixom, 820 F.2d 170, 174 (6th Cir. 1987)(same); Usher v. City of Los Angeles, 828 F.2d 556, 561-62 (9th Cir. 1987)("[T]he general rule is that a claim of malicious prosecution is not cognizable under 42 U.S.C. § 1983 if process is available within the state judicial system to provide a remedy. . . . However, 'an exception exists to the general rule when a malicious prosecution is conducted with the intent to deprive a person of equal protection of the laws or is otherwise intended to subject a person to a denial of constitutional rights.'")(quoting Bretz v. Kelman, 773 F.2d 1026, 1031 (9th Cir. 1985)(en banc)(other citation omitted); cf. Reid v. New Hampshire, 56 F.3d 332, 341 (1st Cir. 1995)("Since New Hampshire recognizes the common-law torts of false arrest . . . and malicious prosecution, . . . the claim that Reid was arrested without probable cause should have been addressed under New Hampshire law, not section 1983.").

Our own circuit has not always written consistently on this issue.  In Lusby v. T.G. & Y. Stores, 749 F.2d 1423, 1431 (10th Cir. 1984), cert. denied, 474 U.S. 818 (1985), we stated that "[m]alicious prosecution does not automatically constitute a denial of due process."  We further observed, however, that "if the misuse of the legal procedure is egregious there may be a deprivation of constitutional dimensions for which a plaintiff can invoke § 1983."  Id.  We reiterated that view in Anthony v. Baker, 767 F.2d 657, 662-63 (10th Cir. 1985). In Robinson, 895 F.2d at 654, on the other hand, we appeared to require only the common law elements of malicious prosecution.  Most recently, we stated that "[i]t is generally accepted that the common law of torts is the starting point for determining the contours of a malicious prosecution claim under § 1983."  Wolford[ v. Lasater, 78 F.3d 484, 489 (10th Cir. 1996)].[17]  We went on in Wolford, however, to consider whether the plaintiff had established a Fourth Amendment violation. Reconciling these various cases, we conclude that our circuit takes the common law elements of malicious prosecution as the "starting point" for the analysis of a § 1983 malicious prosecution claim, but always reaches the ultimate question, which it must, of whether the plaintiff has proven a *constitutional* violation.  Following Albright[ v. Oliver, 510 U.S. 266 (1994)(plurality)], in the § 1983 malicious prosecution context, that constitutional right is the Fourth Amendment's right to be free from unreasonable seizures.

Taylor v. Meacham, 82 F.3d 1556, 1560-61 (10th Cir. 1996)(emphasis in the original)(footnotes omitted).

Unfortunately, the Tenth Circuit has not taken a consistent position in defining malice for a § 1983

malicious prosecution claim subsequent to Taylor v. Meacham: on some occasions the Tenth

Circuit has looked to state law to define § 1983 malice, while on other occasions, the Tenth Circuit

has only looked to other Tenth Circuit precedent, or has relied on the parties' stipulation.  See

Rodriguez v. Smith, No. 15-CV-681 WPL/LF, 2017 WL 11450998, at *4-5 (D.N.M. Apr. 7,

2017)(Lynch, M.J.)(recognizing that, "'[a]s for malice, it is not clear whether the applicable

definition comes from the state jurisdiction in which the district court sits or prior Tenth Circuit

decisions.").[18]  Although the Court recognizes that state law is the starting point, see Erikson v.

---

[18]In one instance, the Tenth Circuit, in an unpublished decision, turned to Colorado law for its definition of malice, see Chavez-Torres v. City of Greeley, 660 F. App'x 627, 629 (10th Cir. 2016)(unpublished)(defining malice, under Colorado law, "as 'any motive other than a desire to bring an offender to justice.'")(quoting Suchey v. Stiles, 155 Colo. 363, 394 P.2d 739, 741 (1964)); whereas two published Tenth Circuit cases have relied on either a stipulation or definition from earlier Tenth Circuit decisions, see Fletcher v. Burkhalter, 605 F.3d 1091, 1095 (10th Cir. 2010)(noting that the parties agree that malice "requires intentional or reckless disregard of the truth" and citing Pierce v. Gilchrist, 359 F.3d 1279, 1297 (10th Cir. 2004), where the court did not define it); Novitsky v. City of Aurora, 491 F.3d 1244, 1258 (10th Cir. 2007)(holding that malice was not present because the plaintiff did not show a misstatement in a police report was intentional and citing Taylor v. Meacham, 82 F.3d 1556, 1563 (10th Cir. 1996), which also did not define malice).  The issue stems from the "use [of] common law elements of malicious prosecution as the starting point" for the analysis of a § 1983 malicious prosecution claim. Novitsky v. City of Aurora, 491 F.3d at 1257 (internal quotation marks omitted).  See Pierce v. Gilchrist, 359 F.3d 1279, 1285-91 & n.3 (10th Cir. 2004)(concluding that the elements of the common-law tort are merely a starting point; they are not dispositive).  The Honorable William P. Lynch, United States Magistrate Judge for the United States District Court for the District of New Mexico, recognized the lack of clarity, and applied New Mexico law:

> As for malice, it is not clear whether the applicable definition comes from the state jurisdiction in which the district court sits or prior Tenth Circuit decisions. . . .  Though not dispositive on the issue, the parties agree that the applicable definition of malice  comes from a New Mexico Supreme Court case, DeVaney v. Thriftway Marketing Corporation, 953 P.2d 277, 283 (N.M. 1997), overruled on other grounds by Durham v. Guest, 204 P.3d 19, 26 (N.M. 2009), which defined malice as "a primary motive by the defendant in misusing the process to accomplish an illegitimate end." . . . "Malice . . . may be inferred by the jury from the want of probable cause.  But the want of probable cause can not be inferred from any degree

Pawnee Cty. Bd. of Cty. Comm'rs, 263 F.3d 1151, 1154 (10th Cir. 2001)("In this circuit, state law provides the starting point for analyzing a Fourth Amendment claim for malicious prosecution under § 1983.")(citing Taylor v. Meacham, 82 F.3d at 1561-62); Jackson v. New Mexico Pub. Def.'s Off., 361 F. App'x 958, 964 (10th Cir. 2010)(applying New Mexico law after noting that, "[i]n this circuit, the state tort law of false arrest, false imprisonment, or malicious prosecution provides a starting point for analyzing a corresponding claim under § 1983")(citing Erikson v. Pawnee Cty. Bd. of Cty. Comm'rs), the Court must "always reach[] the ultimate question . . . of whether the plaintiff has proven a *constitutional* violation," Taylor v. Meacham, 82 F.3d at 1561-62 (emphasis in the original).  Accord Wilkins, 528 F.3d at 797; Novitsky v. City of Aurora, 491 F.3d 1257-58; Crudup v. Schulte, 12 F. App'x 682, 685 (10th Cir. 2001)("In other words, the evidence ultimately must show that [the plaintiff] was subjected to an unreasonable seizure in violation of the Fourth Amendment.")(citing Taylor v. Meacham, 82 F.3d at 1561-62).   For instance, the Court, in determining the definition of probable cause in a § 1983 malicious prosecution case, has explained:

> In this § 1983 action, "[w]hile it is true that state law with respect to arrest is looked to for guidance as to the validity of the arrest since the officers are subject to those local standards, it does not follow that state law governs." Wilder v. Turner, 490 F.3d 810, 814 (10th Cir. 2007).  Thus, Tenth Circuit § 1983 precedent binds the Court. Wilder v. Turner, 490 F.3d at 814 ("Nor, perhaps more importantly, are we bound by a state court's interpretation of federal law -- in this case the Fourth Amendment.").  The Court, however, looks to New Mexico caselaw to determine what the underlying state law charges' elements are. See Wilder v.
>
> ——————————
> of even express malice." DeVaney [v. Thriftway Marketing Corporation], 953 P.2d at 287-88 (quoting Leyser v. Field, 23 P. 173, 174 (N.M. 1890)).

Rodriguez v. Smith, No. 15-CV-0681 WPL/LF, 2017 WL 11450998, at *4-5 (D.N.M. Apr. 7, 2017)(Lynch, M.J.). See Barton v. City & Cty. of Denver, 432 F. Supp. 2d 1178, 1194 (D. Colo. 2006)(Figa, J.)(applying Colorado law for § 1983 malicious prosecution claim and concluding that "[m]alice is shown if the primary motive of the defendant was a motive other than a motive to bring to justice a person thought to have committed a crime"), aff'd, No. 06-1536, 2007 WL 3104909 (10th Cir. Oct. 24, 2007).

Turner, 490 F.3d at 814.

McGarry v. Bd. of Cty. Commissioners for Cty. of Lincoln, 294 F. Supp. 3d 1170, 1203 n.18 (D.N.M. 2018)(Browning, J.).   The Tenth Circuit's § 1983 definition of malice is not tied to a state law definition of malice in the way that probable cause depends on state law charges: the Tenth Circuit explains that "the malice element of a Fourth Amendment malicious prosecution claim focuses on the defendant officer's knowledge or state of mind," Mglej v. Gardner, 974 F.3d 1151, 1171 (10th Cir. 2020), and it may be inferred from either a defendant's intentional or reckless conduct, see Stonecipher v. Valles, 759 F.3d 1134, 1146 (10th Cir. 2014)(citing Wilkins, 528 F.3d at 800-01), or "'if a defendant causes the prosecution without arguable probable cause,'" Mglej v. Gardner, 974 F.3d at 1171 (quoting Stonecipher v. Valles, 759 F.3d at 1146).[19]   The Supreme

---

[19]In Mglej v. Gardner, the Tenth Circuit notes:

> While ordinarily a Fourth Amendment claim is measured by an objective reasonableness standard, the malice element of a Fourth Amendment malicious prosecution claim focuses on the defendant officer's knowledge or state of mind. See Young v. City of Idabel, 721 F. App'x 789, 804 (10th Cir. 2018)(unpublished)(summarizing Tenth Circuit cases holding "malice" element of § 1983 malicious prosecution claim is met when there is evidence that the defendant officer knowingly made false statements or knew there was no probable cause to support prosecution); see also Stonecipher[ v. Valles, 759 F.3d at 1146](citing Wilkins, 528 F.3d at 800-01, for the proposition that malice may be inferred from a § 1983 defendant's intentional or reckless conduct). See generally Manuel[ v. City of Joliet, -- U.S. --, 137 S. Ct. 911, 925, (2017)(Alito, J., dissenting)(noting tension between "subjective bad faith, i.e., malice [which] is the core element of a malicious prosecution claim" and Fourth Amendment's objective reasonableness standard).

Mglej v. Gardner, 974 F.3d 1151, 1171 n.14.  In Mglej v. Gardner, the Tenth Circuit concluded that the plaintiff demonstrated malice where

> [t]he plain language of the two statutes under which Deputy Gardner booked Mglej clearly do not apply to the circumstances presented in this case.  Moreover, charging Mglej with obstructing justice, which clearly did not apply, supported doubling the bail Deputy Gardner suggested, from $555 to $1,110.  The judge set Mglej's bail at $1,000.

Court of New Mexico defines malice as "a primary motive in the use of process to accomplish an illegitimate end." Durham v. Guest, 2009-NMSC-007, ¶ 29, 145 N.M. 694, 701, 204 P.3d 19, 26. Both the Tenth Circuit's and New Mexico's definition rely on the defendant's intent to abuse the legal process for extraneous improper purpose.

The Court concludes, therefore, on summary judgment after drawing reasonable inferences in the light most favorable to Reeves, that Chafin acted with malice, because Reeves provides specific evidence that on prior encounters Chafin racially abused him, and this conclusion supports the reasonable inference that Chafin disclosed Reeves' criminal record to Reeves' employer. Reeves argues that Chafin acted with malice, because (i) racial animus motivated Chafin when he issued the state criminal summons, Chafin's alleged prior acts of racism directed at Reeves evidence, see Response at 14; Reeves Decl. ¶¶ 23-24, at 8-10 (detailing several encounters with Chafin before the June 30, 2016, incident where Chafin "would sometimes draw his gun toward me[, and] . . . address[] me in a derogatory and frequently racist fashion," including calling him the n-word); and (ii) Chafin "destroy[ed] Plaintiff's occupational opportunities," when

> [u]pon information and belief, Defendant maliciously and recklessly communicated information to Plaintiff's employer at an unknown time after the filing of the criminal complaint and falsely claimed prior criminal activity by Plaintiff and disparaged and defamed Plaintiff to his employer in order to injure the Plaintiff as a further result of Plaintiff's actions and statements during the investigation which had led to the criminal charge against him,

---

> Furthermore, Mglej testified in his deposition that, when the intake officer at the jail asked Deputy Gardner on what charges the deputy was booking Mglej, Deputy Gardner responded: "I don't know.  Let me look at the book.  I am sure I can find something." . . .  Mglej contends that the deputy then looked through the Utah criminal code before charging Mglej under two criminal statutes that, by their plain language, did not apply to the circumstances precipitating Mglej's arrest. Mglej has, thus, sufficiently met the malice element of a malicious prosecution claim.

Mglej v. Gardner, 974 F.3d at 1171.

Plaintiff's Motion for Further Extension to Respond to Defendant's Motion for Summary

Judgment at 3, filed February 10, 2021 (Doc. 46)("Reply in Support of Extension"); see Response

at 17 (arguing, with no support, that "Chafin had accomplished his likely purpose of eliminating

Plaintiff's business").  In support of his allegation that Chafin "destroy[ed] [his] occupational

opportunities" by "communicat[ing] [false] information to Plaintiff's employer," Reply in Support

of Extension at 2, Reeves states in his declaration:

> On or about July 27, 2016, while my criminal case was still pending, I was
> called by William Smith, the owner of the hotel and [he] advised that my contract
> for security services was terminated.  He said he was firing me.  When I asked why,
> he said that the police gave him a report which he had read.  He said the report has
> everything I ever did wrong.  Then he read things to me from the report about
> incidents which occurred when I was a juvenile, including incidents which took
> place at the high school I attended.  He identified a fight I got into in high school,
> about twenty years earlier, including the name of one student who had been in the
> fight with me.  Mr. Smith said it looks like I have an anger problem.  He read about
> some of the incidents from the report, and I asked who gave him that record -- he
> said the police gave it to him.  He did not identify the officer, though I asked three
> times, because I thought juvenile records were confidential and thought the police
> off[i]cer who gave it to him may have been the defendant in this case, and may have
> violated my rights in doing so.  I called back later to ask who gave him that report,
> but he would not answer my calls and did not return them.

Reeves Decl. ¶ 33, at 13-14.  If it is true that Chafin disclosed the information, Reeves' allegations

show that Chafin was motivated by malice; however, there is a missing factual link that Chafin

was the police officer who disclosed Reeves' criminal records.  The issue then is whether the Court

can draw a reasonable inference that Chafin disclosed the information to Reeves' employer.[20]  See

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)("Liberty Lobby").

On summary judgment, the "evidence of the non-movant is to be believed, and all

---

[20]To the extent that Reeves requests further time to conduct discovery to clarify who
disclosed the information to his employer, see Motion for Extension at 1-4, the Court concludes
that additional discovery on summary judgement is not necessary, because, drawing all reasonable
inferences in favor of reeves, as the Court explains, Chafin disclosed the information.  In addition,
as the Court discusses, there is a reasonable inference that racism motivated Chafin, also satisfying
the malice element.

justifiable inferences are to be drawn in his favor." Liberty Lobby, 477 U.S. at 255.  In support

that Chafin acted with malice, Reeves, in his declaration, states that Chafin has racially abused

him in the past, including calling him the n-word on a prior occasion:

> I had previously had several significant earlier dealings with him during my time as a security officer at the hotel.  When I saw crimes being committed on the hotel property, I would sometimes detain the perpetrator if I was reasonably able to lawfully do so, and would call the Albuquerque Police Department to report the crimes, which often involved incidents with vehicles in this same parking lot.  Frequently when I did so, Defendant Chafin would respond.  The first time he responded was memorable.  I had detained a subject who was attempting to steal a vehicle.  I then contacted police by phone. I displayed, but did not use, a stun gun to maintain custody until police arrived.  When police arrived, the lead officer was the Defendant.  He directed me to remove my security equipment and held me at gunpoint.  I described my actions and the attempted thief s actions to him, and he simply told the suspect car thief to leave. I objected and explained the basis for the detention.  I said as the owner of the business with a contract with the hotel, I had acted lawfully.  He then said words to the effect that "a nigger like you can't even own a car much less a business."

> He left without taking further action at that time, but he was the primary officer on several later calls to police concerning other detained citizens.  He never investigated any of those cases.  He would sometimes draw his gun toward me and have me release the suspected criminal.  He addressed me in a derogatory and frequently racist fashion on some of those occasions.  Contacts and actions such as those occurred approximately six (6) or seven (7) times in the past.  In each instance, he did not further investigate the crimes but simply advised the perpetrator whom I had lawfully detained to leave.  He was usually somewhat aggressive toward me, although I was in uniform and identified by badge and Identification card on each occasion.

Reeves Decl. ¶¶ 23-24, at 8-10.  Although, Chafin calls Reeves' declaration "self-serving," Reply

at 3, it is not for the Court to resolve credibility on summary judgment, see Liberty Lobby, Inc.,

477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of

legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling

on a motion for summary judgment or for a directed verdict.").  Further, Chafin argues that the

BWC footage of the June 30, 2016, incident "contradict[s]" Reeves' "appalling allegations . . . that

Officer Chafin is racist," and "demonstrates no bias, motive, racism, or malice," Reply at 3, 8

(citing Scott v. Harris, 550 U.S. at 380-381); however, even though that BWC footage of the June 30, 2016, incident does not show any overt racism, such as the use of derogatory or racist language, see Axon BWC Videos 1-3,[21] the BWC footage does not depict prior encounters between Chafin and Reeves, and Chafin admits that he has had encounters with Reeves in the past, see Axon BWC Video 1 at 15:20-15:40 (documenting Chafin stating to the property owner that "[w]e've been out with [Reeves]" before).  The Court concludes, with "all justifiable inferences . . . drawn in [non-movants Reeves'] favor," that Chafin acted with malice, because Reeves provides specific evidence that on prior encounters Chafin racially abused Reeves, and this conclusion supports the reasonable inference that Chafin disclosed Reeves' criminal record to Reeves' employer.  Liberty Lobby, Inc., 477 U.S. at 255.  See Hunt v. Cromartie, 526 U.S. 541, 553 (1999)("Summary judgment in favor of the party with the burden of persuasion . . . is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact."); Lewis v. City of Ft. Collins, 903 F.2d 752, 759 (10th Cir. 1990)(A "plaintiff may avoid summary judgment only by producing specific evidence that [the defendants'] actions were tainted by a discriminatory motive.").

Chafin does not dispute the fifth element of a malicious prosecution claim -- that Reeves sustained damages.  See Wilkins, 528 F.3d at 799.  Reeves states that: (i) he had to retain counsel to defend himself on the state criminal complaint, see Reeves Decl. ¶¶ 30-31, at 12-13; (ii) Reeves' employer fired him, because the police disclosed Reeves' criminal record, including his juvenile

---

[21]Reeves raises the issue of race a few times during the June 30, 2016, incident.  For instance, early on in the encounter, when Chafin states he wants to pat Reeves down for weapons, Reeves asks why he Chafin wants to pat him down: "I haven't broken anything.  Dude, I'm Black and doing my job," to which Chafin responds "I don't care that . . . I don't care what color you are, man. . . .  It's just procedure.  If it was a different call, I swear I wouldn't be doing it. . . .  Turn around."  Axon BWC Video 1 at 1:02-1:28.

record, see Reeves Decl. ¶¶ 33-35, at 13-14; (iii) Reeves was unable to find employment for the next three months, see Reeves Decl. ¶¶ 36-37, at 14-15.  ; and (iv) "I was never able to expand my business as I had planned to do when I started it," Reeves Decl. ¶¶ 36-37, at 14-15.  The Court concludes that Reeves' satisfies the damages element.

Accordingly, on summary judgment, although Reeves satisfies elements one, two, four, and five of a § 1983 malicious prosecution claim, because Chafin had probable cause, Reeves cannot show that Chafin violated his constitutional rights.  See Wilkins, 528 F.3d at 799.  See, e.g., Crudup v. Schulte, 12 F. App'x 682, 685-86 (10th Cir. 2001)(concluding, on a motion to dismiss, that "even accepting that [the defendant's alleged acts of racial bias] gave rise to a cognizable § 1983 claim for malicious prosecution, in this case [a] finding of probable cause . . . is fatal to the claim"); McGarry v. Bd. of Cty. Commissioners for Cty. of Lincoln, 294 F. Supp. 3d at 1201 ("To prevail on his malicious prosecution claims, [the plaintiff] must demonstrate that the Officers did not have probable cause for the charges brought."); King v. Knoll, 399 F. Supp. 2d 1169, 1179 (D. Kan. 2005)(Robinson, J.)("Plaintiff cannot survive a summary judgment motion on her malicious prosecution claim, because plaintiff cannot show under any circumstances, that defendants instituted, procured, or continued a criminal proceeding without probable cause.").

Last, the Court concludes that Reeves' constitutional rights were not clearly established.  Reeves relies on three cases: Howl v. Alvarado, 783 F. App'x 815 (10th Cir. 2019); Johnson v. Sw. Airlines Co., No. 20-CV-02598-SI, 2020 WL 6891823 (N.D. Cal. Nov. 24, 2020)(Illston, J.); Hatcher v. CBL & Assocs. Properties, Inc., No. 3:12-CV-00351, 2013 WL 442681 (M.D. Tenn. Feb. 5, 2013)(Trauger, J.); however, none of these cases hold or suggest that a plaintiff can bring a § 1983 malicious prosecution claim where the officer has probable cause.  The Tenth Circuit's opinion in Howl v. Alvarado is not on point, because, there, the Tenth Circuit concluded the

plaintiff sufficiently pleaded a malicious prosecution claims, where an officer did not have probable cause, "because [the] Officer . . . was acting in concert with the confidential informant to plant the pipe in [the plaintiff's] truck and the methamphetamine on his person." Howl v. Alvarado, 783 F. App'x at, 819.  Here, there is nothing on the record suggesting of fabricated evidence.  In Johnson v. Sw. Airlines Co., the Honorable Susan Illston, United States District Judge for the Northern District of California, concludes that the "plaintiffs sufficiently allege Southwest's reason for removing plaintiffs [from the flight] was pretextual and thereby, without probable cause.  As such, plaintiffs have also adequately alleged racial animus on the part of Southwest to satisfy the third element[, malice,] for a malicious prosecution claim." Johnson v. Sw. Airlines Co., 2020 WL 6891823, at *6.  In Hatcher v. CBL & Assocs. Properties, Inc., the Honorable Aleta Trauger, United States District Judge for the Middle District of Tennessee, concluded that the plaintiff  "articulated a claim against [the] Sergeant . . . for malicious prosecution," where the plaintiff "alleges that [the] Sergeant . . procured [her] arrest on false charges through [another o]fficer . . . , then assisted the state in prosecuting her for those charges, despite knowing that they were baseless." 2013 WL 442681, at *6.  The Court agrees, that if Chafin had issued the criminal summons without probable cause -- as pure pretext to hide his racial animus -- Reeves would prevail; that, however, is not the case here, where Chafin had probable cause.

**IT IS ORDERED** that (i) the Defendant Joshua Chafin's Motion for Summary Judgment, filed June 17, 2020 (Doc. 18), is granted; (ii) the Defendant Joshua Chafin's Motion for Stay of Discovery, filed June 17, 2020 (Doc. 20), is granted; (iii) the Plaintiff's Motion for Further Extension to Respond to Defendant['s] Motion for Summary Judgment, filed October 13, 2020 (Doc. 30), is denied; and (iv) Plaintiff's Motion for Furthe[r] Extension to File Response to Motion

for Summary Judgment, filed March 18, 2021 (Doc. 52), is granted.


_____
UNITED STATES DISTRICT JUDGE


*Counsel:*

Ray Twohig
Ray Twohig, P.C.
Albuquerque, New Mexico

     *Attorney for the Plaintiff*

Esteban A. Aguilar Jr.
  City Attorney
Kristin J. Dalton
Peter Haynes
  Assistant City Attorneys
City of Albuquerque
Albuquerque, New Mexico

     *Attorneys for the Defendant*